713 So.2d 785 (1998)
Elmira P. JEFFERSON, et al.
v.
CHEVRON U.S.A. INC., et al.
Nos. 98-CA-0254, 97-C-2436.
Court of Appeal of Louisiana, Fourth Circuit.
May 20, 1998.
*786 Walter C. Thompson, Jr., James M. White, III, Mark P. Seyler, Barkley & Thompson, New Orleans, for Plaintiffs-Appellees Elmira P. Jefferson, et al.
Gene W. Lafitte, Marie Breaux, Karen Daniel Ancelet, Liskow & Lewis, New Orleans, for Defendant-Appellant Chevron, U.S.A. Inc.
*787 Before KLEES, PLOTKIN and McKAY, JJ.
KLEES, Judge.
This case comes before this Court on Chevron U.S.A.'s motion for summary judgment. Chevron has devolutively appealed from the trial court's denial of its motion for summary judgment as to plaintiffs' antitrust claims and has filed an application for supervisory writs from the ruling of the trial court on plaintiffs' non-antitrust claims. Although the trial court rendered judgment in plaintiffs' favor, plaintiffs answered defendant's appeal on the basis of statements made in the trial court's reasons for judgment. On joint motion of the parties, this Court consolidated the writ application with the present appeal.
For the reasons stated more fully herein, we affirm the trial court's judgment denying defendant's motion for summary judgment as to plaintiffs' antitrust claims. As to the trial court's ruling on plaintiffs' non-antitrust claims, we grant defendant's application for supervisory writs, vacate the ruling of the trial court and remand for further proceedings.

PROCEDURAL HISTORY
In March of 1994, the plaintiffs brought the present suit for damages against Chevron U.S.A. ("defendant") and three of Chevron's wholesale distributors. Plaintiffs alleged violations of the Louisiana Anti-Trust statute, LSA-R.S. 51:121, et seq., and violations of the Louisiana Unfair Trade Practices Act, LSA-R.S. 51:1401, et seq. Plaintiffs further asserted claims against defendant for other violations of state law, including breach of contract, abuse of rights, intentional interference with business relationship, misrepresentation and unjust enrichment.
Defendant answered plaintiffs' petition, and subsequently brought a motion for summary judgment. Following a hearing, the trial court denied defendant's motion and issued written reasons for judgment.
This devolutive appeal followed. While the usual procedural vehicle for seeking review of a denial of a motion for summary judgment would have been by supervisory writ, defendants were afforded an expedited right of appeal from the trial court's ruling pursuant to LSA-R.S. 51:135, a special provision for review of antitrust actions. However, the appellate jurisdiction conferred by LSA-R.S. 51:135 applies specifically to antitrust claims, and, absent irreparable injury, defendant has no right to appeal the denial of the summary judgment as to plaintiffs' non-antitrust claims. La. Code Civ. Proc. art.2083; Orleans Parish School Bd. v. Scheyd, Inc., 95-2653 (La. App. 4 Cir. 4/24/96), 673 So.2d 274. Accordingly, defendant sought supervisory writs of review of these issues, and this Court has consolidated this writ application with the present appeal. Thus, both the antitrust claims and the non-antitrust claims will be considered at this time, albeit through separate procedural vehicles.

FACTS
The following statement of facts is taken from plaintiffs' petition and from the documents submitted at the motion for summary judgment.
The plaintiffs in this case are current or former Chevron service station dealers in the Greater New Orleans area. Defendant Chevron U.S.A. refines, produces and manufactures various petroleum products and motor fuels, including gasoline and diesel fuels, and markets these products in three ways. First, it sells gasoline to branded independent dealers, such as plaintiffs, who also generally lease their service station outlets from Chevron. Second, Chevron sells gasoline to wholesalers and unbranded retailers, commonly referred to as "jobbers." Jobbers sell the gasoline to "jobber-supplied" stations under the Chevron insignia and trademark. Further, jobbers provide their own transportation for the delivery of motor fuels. Third, Chevron sells gasoline directly through Chevron-owned service stations operated by Chevron employees, or "co-op" stations.
The plaintiffs in this case represent the first level in Chevron's distribution system. Each of the plaintiffs in this case entered into Dealer Supply Contracts ("contracts") with Chevron that obligate them to buy all of their Chevron branded gasoline directly from *788 Chevron, and to pay "Company's [Chevron's] prices to Dealer in effect at the time and place of delivery for the particular product, grade, quantity and type of delivery involved, as established by Company from time to time." (Dealer Supply Contract, paragraph 3(b)). All but two of the plaintiff dealers also lease their stations from Chevron pursuant to a Lease Agreement containing a variable monthly rent computed partly on the basis of the number of gallons of Chevron fuel that the plaintiffs have sold each month. Chevron contends that it has a substantial financial investment in the acquisition, remodeling and maintenance of the leased stations and further maintains the environmental responsibility for the fuel purchased by the independent dealers.
Defendants Val J. Dauterive & Sons, Inc., Dade Vincent, Inc. d/b/a Metro Oil & Gas, and Huber Oil Company, Inc. are Chevron "jobbers" who purchase gasolines and diesel fuels from Chevron for resale, and who distribute those products to independent stations and retailers not bearing the Chevron trademark. By the terms of the contracts, Chevron prohibits the plaintiff dealers from purchasing Chevron motor fuels from Chevron's jobbers, and Chevron prohibits the jobbers from selling Chevron motor fuels to the plaintiff dealers. By this lawsuit, plaintiffs seek a declaratory judgment and injunctive relief prohibiting the defendant jobbers from refusing to sell fuel to plaintiffs. These defendants did not participate in the motion for summary judgment brought in the trial court by defendant Chevron, and plaintiffs' claims against these defendants are not part of this appeal.
The basis of plaintiffs' claims against Chevron is that Chevron arbitrarily manipulates the price of the fuel it sells to the independent dealers and unreasonably prohibits plaintiffs from purchasing the fuel at lower prices from the jobbers. The price the plaintiff dealers pay to Chevron for gasolines and diesel fuels is called the "dealer tank wagon," or "DTW" price. Based on the DTW price in effect, the plaintiffs set the price to the public or "street price." The price the jobbers pay for their wholesale supplies of motor fuels purchased from Chevron is referred to as the "rack" price, and the jobber-supplied stations set their street price accordingly. At the co-op stations, Chevron retains title to the fuel until it is sold to the public at the pump, and Chevron sets the street price for the gasoline.
Chevron periodically adjusts the prices for its fuels based on a zone pricing mechanism. Chevron has established price zones, which it refers to as "price reference areas," and Chevron makes "temporary competitive adjustments" based on the prices of the competition in the particular area. Plaintiffs allege that Chevron enhances the competitive advantage of its company-operated stations by dictating the DTW and the subsequent retail price charged by the plaintiff dealers.
Plaintiffs allege in their petition that Chevron's DTW prices to the plaintiff dealers have been unreasonably higher than Chevron's rack price to the defendant jobbers. Plaintiffs contend that the rack prices to the jobbers have been so much lower than the DTW prices that the jobbers have been able to resell to independent stations and retailers at prices much lower than the DTW prices the plaintiff dealers are forced to pay to Chevron. Plaintiffs contend that the differential is greater than the cost of transportation or other costs incurred by the jobbers. Plaintiffs argue that the differential between DTW and rack prices has damaged the ability of the plaintiff dealers to compete effectively with jobbers who resell unbranded Chevron motor fuels at significantly lower prices, and has also damaged the ability of the plaintiff to compete with Chevron's own co-op stations.
Further, plaintiffs allege that Chevron improperly administered the variable rent program to increase Chevron's rental revenue whenever the effects of their pricing manipulation reduced the volume of fuel plaintiffs could sell.
Plaintiffs allege that for the purposes of the antitrust violations, the relevant geographic market involved is the Greater New Orleans area, including the Parishes of Orleans, Jefferson, St. Bernard and Plaquemines. Plaintiffs allege that the relevant product market is Chevron motor fuels (gasoline and diesel fuels).

*789 SUMMARY JUDGMENT STANDARDS

The standard for summary judgments under Louisiana law has been recently modified by legislative revision of Article 966 of the Code of Civil Procedure. Summary judgments are now favored, and the rules regarding such should be liberally applied. La. Code Civ. Proc. art. 966A(2); Oakley v. Thebault, 96-0937 (La.App. 4 Cir. 11/13/96), 684 So.2d 488, 490. Appellate courts review summary judgments de novo. A motion for summary judgment which shows that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law shall be granted. La.Code Civ. Proc. art. 966 C(1); Smith v. Our Lady of the Lake Hosp. Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 751.
Further, Louisiana law now authorizes a partial summary judgment. By Acts 1997, No. 483, effective July 1, 1997, the legislature revised La Code of Civ. Proc. art. 966(E), which now provides as follows:
A summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case.
We will consider the motion now before us with these standards in mind.

LOUISIANA ANTITRUST STATUTE
The plaintiffs allege violations by the defendant of LSA-R.S. 51:122, which provides:
Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce in this state is illegal.
LSA-R.S. 51:122 is virtually identical to Sec. 1, et seq. of the Sherman Act (15 U.S.C. § 1 et seq.), and in reviewing allegations of violations of the Sherman Act, federal courts have applied the Rule of Reason to determine which contracts or combinations constitute an unreasonable restraint of trade. Continental T.V. Inc. v. GTE Sylvania Inc., 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977). Although Louisiana's antitrust law is not as well developed as the federal law, our courts have nonetheless recognized that the broad language of Louisiana's prohibition against every contract, combination, or conspiracy in restraint of trade should not be taken literally, but must be interpreted to reach only those combinations or contracts which are "unlawful." See, Louisiana Power & Light Co. v. United Gas Pipe Line Co., 518 So.2d 1050, 1053 (La.App. 4 Cir.1987), writ denied, 523 So.2d 232 (La.1988) and cases cited therein. To state a claim under LSA-R.S. 51:122, the plaintiff is required to allege that the defendant is a party to a contract which results in an unreasonable restraint of trade. Reppond v. City of Denham Springs, 572 So.2d 224, 230 (La.App. 1 Cir.1990). (Emphasis added.)
Plaintiffs allege that Chevron has contracted in a manner so as to exclude plaintiffs from purchasing fuels at competitive prices. Plaintiffs allege that by continually refusing to allow them to purchase gasoline at lower prices from the wholesalers/jobbers, Chevron is unreasonably restraining trade. Defendant contends that there is a reasonable basis for its refusal to allow plaintiffs to purchase fuel from the jobbers: the jobbers are a "different class of trade," and defendant has a substantial investment in the leased stations which is not present with the fuel sold to the jobbers, thereby justifying the price differential.
Plaintiffs' claims against Chevron also rest on the theory that defendant's actions constitute monopolized trade in violation of LSA-R.S. 51:123, which provides:
No person shall monopolize, or attempt to monopolize, or combine, or conspire with any other person to monopolize any part of the trade or commerce within this state.
In order to recover under LSA-R.S. 51:123, the plaintiff is required to prove that defendant either attempted to monopolize or conspired to monopolize any part of the trade or commerce within this state. Monopoly power is defined as the ability to control prices or to exclude competition from the market. U.S. v. E.I. du Pont de Nemours & Co., 351 U.S. 377, 391-92, 76 S.Ct. 994, 1005-06, 100 L.Ed. 1264 (1956); Louisiana Power & Light Co. v. United Gas Pipe Line Co., 493 So.2d 1149, 1161, n. 31 (La. 1986). To determine the existence of monopoly *790 power, it is necessary to define the market within which that power is allegedly exercised. Louisiana Power & Light Co. v. United Gas Pipe Line Co., 478 So.2d 1240, 1248 (La.App. 4th Cir.1985), writ granted, 484 So.2d 130 (La.), affirmed in part, reversed in part, 493 So.2d 1149 (La.1986).
The trial court denied defendant's motion for summary judgment on these antitrust claims on the basis that there exist material issues of disputed facts. In its reasons for judgment, the trial court stated:
The Court finds that plaintiffs claims under La Rev. State. 51:122 and 51:123 present issues of material fact which cannot be determined on a Motion for Summary Judgment. Plaintiffs' [sic] allege that Chevron and its jobbers have contracted in a manner so as to exclude the plaintiffs from purchasing fuels at competitive wholesale prices, thereby benefitting Chevron's co-op stations and the stations supplied by jobbers. Defendant asserts that it has not violated Louisiana antitrust law because it does not control the "relevant market." Chevron asserts that the relevant market in New Orleans is comprised of all gasoline. Plaintiffs argue that the relevant market for antitrust purposes is Chevron motor fuel products sold in the Greater New Orleans area. These arguments only highlight the material facts in dispute involving the antitrust claims.
On appeal from this ruling, defendants contend that plaintiffs' antitrust claims must fail as a matter of law because Chevron lacks power in the relevant market to commit the alleged violations. In support of this argument, defendant submitted the affidavit of David Kaplan, an economic consultant with experience in antitrust cases. Kaplan reviewed plaintiffs' antitrust claims and opined that the marketing of gasoline in the New Orleans area is intensely competitive and that Chevron's relatively small market presence prevents it from engaging in uncompetitive conduct. Chevron argues therefore that the prices to dealer supply stations must be considered fair because Chevron is in line with the prices of its competitors.
However, the parties disagree as to how to define the relevant market. Plaintiffs contend that the relevant market is Chevron branded gasoline, and they submit affidavits which state that they must compete with other Chevron stations which are able to sell the gas at a lower price based on Chevron's pricing mechanisms. In support of this position, plaintiffs rely on the case of Eastman Kodak Co. v. Image Technical Services, Inc., 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992), which holds that antitrust claims can be based on a single-brand market power.
Defendants contend that the relevant market includes all products reasonably interchangeable with defendant's product, and therefore the relevant market is not just defendant's particular brand, but is all gasoline being sold in the relevant geographic area. Defendant contends that there is no dispute that Chevron has only a 12% share of the gasoline market in New Orleans, and that share is insufficient, as a matter of law, to empower Chevron to impose an unreasonable restraint of trade or to possess monopoly power. In support of this position, defendant cites to several cases from other jurisdictions that hold that a single gasoline manufacturer and distributor does not have sufficient market power in the relevant retail gasoline market to obtain a monopoly or restrain trade.
However, the cases cited by defendants are unpersuasive as the holdings in those cases are based on other state statutes which are not applicable in this case. Our review of the record indicates that by prohibiting the plaintiff dealers from purchasing fuel from the jobbers, Chevron is restraining trade. Whether this restraint is unreasonable is a question of fact. Plaintiffs have alleged that they are unable to compete in the relevant market based on Chevron's DTW prices and plaintiffs' inability to purchase fuel at a lower price from the jobbers. These are likewise factual issues which must be reserved for a trial on the merits.
Further, we agree with the trial court that the definition of the relevant market is a triable issue on the question of monopoly power and the reasonableness of restraint. We find that whether the product is "all gas" or "Chevron gas" is a question of fact which *791 remains in dispute. Although plaintiffs admit that they compete with stations selling other brands of gasoline, plaintiffs also allege that they compete in the Chevron gasoline market against jobber-supplied stations and co-ops. Thus, there is a question of fact as to whether the relevant market is wholesale Chevron products or the entire retail gasoline market in the New Orleans area. We conclude therefore that it is premature to draw conclusions as a matter of law at this point in the case, and the trial court correctly denied defendant's motion for summary judgment as to these antitrust issues.

LOUISIANA PRICE DISCRIMINATION STATUTE
Plaintiffs also assert a claim that defendant's conduct constitutes unfair price discrimination in violation of LSA-R.S. 51:331, which provides as follows:
No person, doing business in Louisiana, and engaged in the production, manufacture, or distribution of any commodity in general use, who shall, intentionally, for the purpose of injuring or destroying the business of a competitor in any locality, discriminate between different sections, communities, cities, or localities in the state by selling such commodity at a lower rate in one section, community, city, or locality, than is charged for the commodity by such person in another section, community, city, or locality, after making due allowance for the difference if any, in the grade or quality of the commodity and in the actual cost of transportation of the commodity from the point of production, if a raw product, or from the point of manufacture, if a manufactured product. All sales so made shall be prima facie evidence of unfair discrimination.
Defendant first contends that plaintiffs do not have a private right of action under the price discrimination statute. Defendant relies on LSA-R.S. 51:334, which provides that the Attorney General examines complaints against corporations and determines whether to institute proceedings against that corporation.
However, Louisiana courts have held in traditional tort cases that private rights of action exist for violation of a statute. Regional Transit Authority v. Lemoine, 93-1896, 93-1897 (La.App. 4 Cir. 11/16/95), 664 So.2d 1303, 1309, writ denied, 96-0412 (La.3/29/96), 670 So.2d 1234. We find that this rule of law is also applicable in the present antitrust suit. Although the penalties applicable to violations of this statute which are contained in LSA-R.S. 51:332 may not be imposed absent proceedings filed by the Attorney General, the plaintiffs in this case may assert a claim that Chevron violated the price discrimination statute in its attempt to prove that Chevron's contracts are unlawful under Louisiana law. Moreover, LSA-R.S. 51:333 provides that all contracts made in violation of LSA-R.S. 51:331u are void, and plaintiffs assert a claim for damages based on contracts which they allege are unlawful and void.
In its reasons for judgment, the trial court did not specifically address plaintiffs' claims of violation of the price discrimination statute. Nevertheless, we have reviewed the record before us and have determined that summary judgment as to these claims is not appropriate.
It is undisputed in the present case that Chevron has sold motor fuels to the defendant jobbers at prices below those charged to the plaintiffs under their supply contracts. Those jobbers, in turn, sell fuel to retail stations that compete with plaintiffs, but at much lower prices than those charged to plaintiffs by Chevron. Chevron also sells fuels directly to the public through its company operated stations which also compete with plaintiffs.
Defendant argues that it is not prohibited by this statute from charging wholesalers different prices than retailers. Further, defendant contends that the statute only prohibits discrimination in prices based on geographic locations.
However, the Louisiana statute provides that it shall be unlawful to "discriminate between different sections, communities, cities, or localities in the state by selling such commodity at a lower rate than is charged for the commodity in another section, community, *792 city, or locality ..." Plaintiffs allege in this case that Chevron has established "price reference areas," and the prices of fuel to the dealers in these areas are different. We find the price discrimination statute to be applicable in this case, and we find that there are disputed issues of fact as to whether defendant has violated this statute to defeat summary judgment.
Further, although Chevron is entitled to charge wholesalers different prices than retailers, there must be a justification for the difference set forth by the supplier. See, Texaco, Inc. v. Hasbrouck, 496 U.S. 543, 110 S.Ct. 2535, 110 L.Ed.2d 492 (1990). In the Hasbrouck case, several independent retailers sued Texaco under the Robinson-Patman Act amendment to the Clayton Act[1] for refusing to sell gasoline to them at the same prices at which it sold to its jobbers. Texaco argued that the price given to its jobbers was a "functional discount." However, the Supreme Court ruled that discounts available to some, but not all persons in a motor fuel distribution chain are discriminatory and illegal. The Court further found that to pass scrutiny under the federal Act, the discount must be related to either the supplier's savings or the wholesaler's costs.
In the present case, defendant contends that the price difference is based on the cost of transportation; however, plaintiffs have alleged that the wholesalers/jobbers could sell the fuel to them at a lower price than Chevron charges, notwithstanding their costs of transportation. Defendant also contends that it has a substantial investment in the leased stations, and therefore the DTW price compensates Chevron for these investments. However, two of the plaintiffs in this case do not occupy a leased station but nevertheless pay Chevron the higher DTW price for its fuel. We find that Chevron failed to offer sufficient evidence to carry its burden on summary judgment that there is some permissible basis for the disparity between the prices Chevron charges to plaintiff and those it charges to the jobbers. Thus, there remain disputed issues of fact as to whether Chevron's price differentials constitute illegal price discrimination under LSA-R.S. 51:331. These issues must be resolved following a trial on the merits.

LOUISIANA UNFAIR TRADE PRACTICES ACT
Plaintiffs further contend that defendant's actions are in violation of the Louisiana Unfair Trade Practices Law, LSA-R.S. 51:1401, et seq. ("LUTPA"). LSA-R.S. 51:1405(A) provides in part:
Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.
Further, LSA-R.S. 51:1409 confers a right of private action on "[a]ny person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal" from unlawful trade practices. This language has been held to confer the private right of action on both consumers and business competitors, such as the plaintiff dealers in this case. Morris v. Rental Tools, Inc., 435 So.2d 528, 532 (La.App. 5th Cir.1983).
LUTPA provides a cause of action both for trade practices which are "unfair" and those which are "deceptive." An act is not required to be both unfair and deceptive. What constitutes unfair and/or deceptive practices is not specifically defined, but is determined on a case by case basis. Wyatt v. PO2, Inc., 26,675 (La.App. 2 Cir. 3/1/95), 651 So.2d 359, writ denied, 95-0822 (La.5/5/95), 654 So.2d 331.
The statutory definition of an "unfair" practice is broad and subjectively stated and does not specify particular violations. Jarrell v. Carter, 577 So.2d 120, 123 (La.App. 1st Cir.1991), writ denied 582 So.2d 1311 (La.1991). A practice is unfair when it offends established public policy and when the practice is unethical, oppressive, unscrupulous, or substantially injurious. Jarrell v. Carter, 577 So.2d at 123. What constitutes an unfair trade practice is to be determined on a case-by-case basis. Monroe Medical Clinic, Inc. v. Hospital Corp. of America, 522 So.2d 1362, 1365 (La.App. 2nd Cir.1988).
*793 A trade practice is "deceptive" for purposes of LUTPA when it amounts to fraud, deceit or misrepresentation. United Group of Nat. Paper Distributors, Inc. v. Vinson, 27,739 (La.App. 2 Cir. 1/25/96), 666 So.2d 1338, 1346, writ denied, 96-0714 (La.9/27/96), 679 So.2d 1358.
Plaintiffs contend that Chevron's conduct in discriminatorily charging plaintiffs unreasonably high prices for the gasoline sold them pursuant to the supply contracts is unfair and violative of LUTPA because it offends established public policy, and is unethical, oppressive, unscrupulous, and caused them substantial injury. Plaintiffs further contend that defendant's practices in setting prices and in preventing them from buying fuel at competitive prices from the jobbers is deceptive and done with the intent to drive them out of business. In fact, plaintiffs show that several of the original named plaintiffs in this case have relinquished their stations to Chevron, allegedly due to Chevron's pricing practices.
Chevron claims that its actions are ordinary business activities, permitted by its contracts with plaintiffs, and that these actions are not violative of LUTPA because Chevron conducts its business with the intent of maximizing its profits and has no intent to put plaintiffs, who are selling Chevron gasoline, out of business.
On these allegations, we hold that plaintiffs are entitled to a trial to determine whether defendant's actions are unfair or deceptive in violation of LUTPA, or whether said actions are simply an exercise of justified business activities. Based on the record before us, we cannot say as a matter of law that Chevron's actions do not constitute unfair trade practices.

OTHER STATE LAW CLAIMS
These claims come before this Court on application of supervisory writ from the trial court's denial of defendant's summary judgment. The trial court stated in its reasons for judgment:
The Court would be inclined to grant defendant's Motion for Summary Judgment, as it relates to the breach of contract and abuse of rights claims. However, summary judgment may not be used merely to decide an issue. A summary judgment may be partial, but it must grant at least some of the relief prayed for. Partial summary judgments which attack theories of recovery without dismissing a party or granting all or part of the relief sought are improperly granted. Williams v. Trapolin Law Firm, 641 So.2d 673 at 676 (La.App. 4th Cir.1994).
As previously stated herein, the summary judgment law has been recently amended and now provides for the granting of a partial summary judgment. As stated by the trial court, this Court has previously held that a partial summary judgment may not be utilized to dispose of theories of recovery. Williams v. Trapolin Law Firm, 93-0877 (La.App. 4 Cir. 7/27/94), 641 So.2d 673, 676. However, the Williams case was decided prior to the 1997 amendments to La. C.C.P. art. 966(E), and partial summary judgments are now permissible to dispose of a theory of recovery. Thus, the trial court erred in relying on this Court's decision in Williams in light of the recent amendments to the summary judgment article.
Plaintiffs' non-antitrust claims against defendant include breach of contract, abuse of rights, intentional interference with a business relationship, unjust enrichment and misrepresentation. In its reasons for judgment, although the trial court denied the summary judgment, the court addressed the merits of plaintiffs' claims for breach of contract and abuse of rights, but did not address plaintiffs' other state law claims. Plaintiffs answered defendant's appeal based on the statements made in the trial court's reasons for judgment which are in error.
We recognize that reasons for judgment set forth the basis for the court's holding and are not binding. Melton v. General Electric Co., 625 So.2d 265, 268 (La.App. 4th Cir.1993). In this case, the trial court found defendant's argument to have merit, but declined to dismiss plaintiffs' claims on the motion for summary judgment based on an erroneous statement of the law. Plaintiffs are correct in their answer to this appeal that the reasons for judgment are not controlling. *794 We find that the trial court's judgment is erroneous, and we are not bound by the trial court's statements in its reasons for judgment regarding the merits of plaintiffs' claims.
As we have concluded that the trial court erred in failing to apply the new summary judgment law to the facts of the present case, we grant defendant's application for supervisory writs and vacate the ruling of the trial court denying defendant's motion for summary judgment on plaintiffs' non-antitrust claims. Although this Court may conduct its own de novo review of defendant's motion, we find it more appropriate to remand the case for reconsideration under the new law. On remand, the trial court will have an opportunity to consider defendant's motion in light of the amended article. See, Kaufmann v. Fleet Tire Service of Louisiana, 97-1428 (La.9/5/97), 699 So.2d 75; Young v. Dupre Transport Co., 97-0591 (La.App. 4 Cir. 10/1/97), 700 So.2d 1156.

CONCLUSION
Accordingly, for the reasons assigned herein, the judgment of the trial court denying defendant's motion for summary judgment as to plaintiffs' antitrust claims is affirmed. We grant defendant's application for supervisory writs, and vacate the ruling of the trial court denying defendant's motion for summary judgment as to plaintiffs' non-antitrust claims. This case is remanded to the trial court for reconsideration in light of Act 483 of 1997. Each party is to bear its own costs of this appeal.
AFFIRMED IN PART; WRIT GRANTED; JUDGMENT VACATED IN PART; CASE REMANDED.
NOTES
[1] The Louisiana statute is closely analogous to this federal statute. See, 15 U.S.C. § 13.