# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 13, 2021

Lyle W. Cayce
Clerk

No. 20-50394

Jaydeep Shah, M.D. M.A.,

*Plaintiff—Appellant*,

*versus*

VHS San Antonio Partners, L.L.C., doing business as Baptist Health System, doing business as North Central Baptist Hospital; Graham Reeve; Dana Kellis, M.D.; William Waechter; Tenet Healthcare Corporation; Tenet Healthcare, Limited,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:18-CV-751

Before Owen, *Chief Judge*, and King and Engelhardt, *Circuit Judges*.
Priscilla R. Owen, *Chief Judge*:

Pediatric anesthesiologist Dr. Jaydeep Shah alleges that Baptist Health System (BHS), its officers, and its parent company (collectively, the BHS parties) (1) committed violations of §§ 1 and 2 of the Sherman Antitrust Act and (2) tortiously interfered with a business relationship by entering into an agreement with STAR Anesthesia, P.A. (STAR) through which STAR became the exclusive provider of anesthesia services to several of BHS's

hospitals in the San Antonio area.  Because Shah's definition of the relevant market is insufficient as a matter of law, we affirm the district court's grant of summary judgment in favor of the BHS parties.

**I**

Jaydeep Shah, M.D. M.A. is a board-certified anesthesiologist who specializes in pediatric anesthesiology in San Antonio, Texas.  In 2006, Shah joined STAR Anesthesia, P.A., an independent group of anesthesiologists, as the Director of Pediatric Anesthesiology.  Soon after, Shah became a full partner and shareholder of STAR.  During Shah's tenure with STAR, STAR entered into a series of agreements (collectively, the BHS-STAR Agreement) to become the exclusive provider of anesthesia services at several acute-care hospitals in the San Antonio area operated by VHS San Antonio Partners, L.L.C., doing business as Baptist Health System, including North Central Baptist Hospital (NCB Hospital).  For pediatric anesthesia specifically, BHS agreed to provide STAR a pediatric income guarantee, promising STAR at least $500,000 in collections for pediatric anesthesia services provided by STAR at NCB Hospital.

In 2012, BHS and STAR incorporated their earlier agreements into an overall agreement for anesthesiology coverage between them.  With that incorporation, STAR became the exclusive provider of anesthesia services at four of BHS's hospitals.  Shah was not a party to the 2012 incorporation, nor was he named in the pediatric income guarantee income provision.  But he continued to practice as a full-time pediatric anesthesiologist with STAR, becoming the primary beneficiary of STAR's guaranteed collections.

In 2016, STAR and BHS negotiated to amend the 2012 agreement and eliminate the $500,000 pediatric income guarantee.  The exclusivity provision remained unchanged.  The next month, as a result of the fallout between Shah and STAR from the elimination of the income guarantee,

STAR terminated its relationship with Shah for cause after notice and a hearing. As a result, Shah could no longer provide pediatric anesthesia services at NCB Hospital or any other BHS facility included in the BHS-STAR Agreement's exclusivity provision.

A few months later, Shah sent a letter to the president of NCB Hospital requesting authorization to provide pediatric anesthesia care at NCB Hospital. In response, the president and CEO of BHS wrote back that Shah's reappointment to the Medical Staff of BHS and his privileges were approved, and that BHS "welcome[d] [Shah's] continued participation in providing this care." In actuality, the exclusivity provision of the BHS-STAR Agreement precluded Shah—no longer affiliated with STAR—from providing pediatric anesthesia services at six BHS facilities (including NCB Hospital). Shah was required to receive an exception to the Agreement from STAR and BHS, as they sometimes granted. An exception was not granted.

After suing STAR in Texas state court to no avail,[1] Shah filed the present suit against BHS, three of its officers, and its parent company for (1) violations of §§ 1 and 2 of the Sherman Act and (2) tortious interference with a business relationship. Shah claimed that the BHS parties excluded him and non-STAR anesthesiologists from practicing in Bexar County and the surrounding areas, causing harm to surgeons and patients. The parties conducted tiered discovery, with Tier One involving the issues of the "relevant market" and "damages/antitrust injury." The BHS parties then moved for summary judgment. The district court granted the motion on the

---

[1] *See Shah v. Star Anesthesia, P.A.*, 580 S.W.3d 260, 268 (Tex. App.—San Antonio 2019, no pet.) (affirming trial court); *Star Anesthesia, P.A. v. Shah*, No. 2018CI04393, 2018 WL 3520044, at *1 (244th Dist. Ct., Bexar County, Tex. June 12, 2018).

No. 20-50394

merits—choosing not to decide the issue of antitrust standing. Shah appealed to this court.

## II

"We review the district court's grant of summary judgment de novo."[2] Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] To defeat summary judgment, Shah must "identify specific evidence in the record" and "articulate the 'precise manner' in which that evidence support[s] [his] claim."[4] In ruling, we must view all facts and inferences in the light most favorable to Shah and resolve all factual disputes in his favor.[5]

Assuming without deciding that Shah provided enough evidence to present a genuine dispute of material fact as to antitrust standing, he must do the same for the individual Sherman Act claims. As a prerequisite to both Sherman Act claims, Shah must define the relevant market.[6] "Without a

---

[2] *S&M Brands, Inc. v. Caldwell*, 614 F.3d 172, 175 (5th Cir. 2010) (emphasis omitted) (citing *Breaux v. Halliburton Energy Servs.*, 562 F.3d 358, 364 (5th Cir. 2009)).

[3] Fed. R. Civ. P. 56(a).

[4] *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (first alteration in original) (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).

[5] *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (first quoting *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003); and then quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

[6] *See Golden Bridge Tech., Inc. v. Motorola, Inc.*, 547 F.3d 266, 271 (5th Cir. 2008) ("To establish a § 1 violation, a plaintiff must prove that: (1) the defendants engaged in a conspiracy; (2) that restrained trade; (3) in the relevant market." (citing *Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 627 (5th Cir. 2002))); *Surgical Care Ctr. of Hammond, L.C. v. Hosp. Serv. Dist. No. 1 of Tangipahoa Par.*, 309 F.3d 836, 839-40 (5th Cir. 2002) ("To establish Section 2 violations . . . a plaintiff must define the relevant market." (quoting *Dr.'s Hosp. of Jefferson, Inc. v. Se. Med. All., Inc.*, 123 F.3d 301, 311 (5th Cir. 1997))).

No. 20-50394

definition of the market there is no way to measure the defendant's ability to lessen or destroy competition."[7]  The relevant market is "the area of effective competition"[8] "in which the seller operates, and to which the purchaser can practicably turn for supplies."[9]  The relevant market has two components: a product market and a geographic market.[10]

"Whether a relevant market has been identified is usually a question of fact; however, in some circumstances, the issue may be determined as a matter of law."[11]  If Shah fails to define his "proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in [his] favor, the relevant market is legally insufficient."[12]  That is, in order for Shah's definition to be legally sufficient, it "must include all 'commodities reasonably interchangeable by consumers for the same purposes.'"[13]

Shah defines the product market as "pediatric anesthesiologists" and the geographic market as "Bexar County and the seven contiguous counties."  He emphasizes that his "product market" definition is not

_____

[7] *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2285 (2018) (alterations omitted) (quoting *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177 (1965)).

[8] *Id.*

[9] *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961).

[10] *Wampler v. Sw. Bell Tel. Co.*, 597 F.3d 741, 744 (5th Cir. 2010).

[11] *Apani*, 300 F.3d at 628 (citing *Seidenstein v. Nat'l Med. Enters., Inc.*, 769 F.2d 1100, 1106 (5th Cir. 1985)).

[12] *Id.*

[13] *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 417 (5th Cir. 2010) (quoting *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956)).

hospitals, as the district court may have understood, but the pediatric anesthesiologists themselves. The BHS parties contend that "in reality," Shah's product market definition is "far narrower" because it "includes only facilities that provide pediatric anesthesia services where [Shah] cannot practice, and excludes other hospitals and non-hospital environments where pediatric anesthesia services are rendered—including some where [Shah] has himself practiced." The BHS parties argue that the product market as defined by Shah does not encompass all interchangeable substitute products and is insufficient as a matter of law.

The district court, relying on our decision in *Surgical Care Center of Hammond*,[14] held that "'[a]bsent a showing of where people could practically go' for pediatric anesthesia services," Shah's definition of the relevant market "failed to meet his burden of presenting sufficient evidence."[15] In *Hammond*, a hospital sued another hospital under §§ 1 and 2 of the Sherman Act, alleging that the defendant-hospital was attempting to monopolize the outpatient surgery product market by abusing its market power over the inpatient care product market, thus "tying" the two products.[16] This court rejected the plaintiff's definition of the relevant market because its expert

> did not attempt to identify the hospitals or clinics that may be deemed competitors of [the defendant]. [The expert] relied solely on what he defined as [the defendant's] service area to

---

[14] *Surgical Care Ctr. of Hammond, L.C. v. Hosp. Serv. Dist. No. 1 of Tangipahoa Par.*, 309 F.3d 836 (5th Cir. 2002).

[15] *Shah v. VHS San Antonio Partners LLC*, No. SA-18-CV-00751-XR, 2020 WL 1854969, at *6 (W.D. Tex. Apr. 9, 2020) (quoting *id.* at 840); *see also Shah*, 2020 WL 1854969, at *5 n.8 (noting that Shah's varying use of the terms "'pediatric anesthesia services' (such as 'pediatric anesthesiology,' 'pediatric anesthesia,' and 'pediatric anesthesiology services')" are "differences without distinction" for purposes of the relevant market definition).

[16] *Hammond*, 309 F.3d at 838.

compose the geographic market. Absent a showing of where people could practicably go for inpatient services, [the plaintiff] failed to meet its burden of presenting sufficient evidence to define the relevant geographic market.[17]

Shah, a pediatric anesthesiologist, sued BHS, a hospital system, alleging Sherman Act violations related to the pediatric anesthesiologist product market. Shah did not attempt to identify, either at summary judgment or in his opening brief, hospitals or clinics "where people could practicably go" for pediatric anesthesia services within Bexar County and the seven contiguous counties. He did not even specify individual pediatric anesthesiologists from whom patients could practicably obtain health care services. Rather, he provided tallies, by county, of pediatric anesthesiologists in Texas that fit the anesthesiology requirements of the BHS-STAR Agreement.

Moreover, as the BHS parties argue, Shah's proposed relevant market does not encompass *all* interchangeable substitute products because it does not include the two non-BHS facilities that the BHS parties contend serve as viable alternatives to BHS facilities. Shah has not provided evidence or any persuasive argument to raise a genuine dispute as to either of those facilities. In fact, in his reply brief, Shah appears to identify those two hospitals as "included in the relevant geographic market." But claims raised for the first time in a reply brief are forfeited.[18]

Drawing all factual inferences in Shah's favor, his relevant market definition is insufficient as a matter of law.

---

[17] *Id.* at 840.

[18] *United States v. Ponce*, 896 F.3d 726, 728 (5th Cir. 2018); *Ashford v. Aeroframe Servs., L.L.C.*, 907 F.3d 385, 398 (5th Cir. 2018) (Jones, J., dissenting).

No. 20-50394

## III

To bolster his § 1 Sherman Act claim, Shah argues that the exclusive BHS-STAR Agreement is a per se illegal tying arrangement. A tying arrangement is "an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier."[19] The BHS parties, citing *Keelan v. Majesco Software, Inc.*,[20] argue that Shah waived his tying arguments because he did not raise those arguments in his pleadings or summary judgment response. Assuming without deciding that Shah did not forfeit the argument, it nevertheless fails.

In *Jefferson Parish*,[21] the Supreme Court held that an exclusive agreement between a hospital and a group of anesthesiologists "does not provide a basis for applying the per se rule against tying."[22] "Tying arrangements need only be condemned if they restrain competition on the merits by forcing purchases that would not otherwise be made."[23] The Court explained that "every patient undergoing a surgical operation *needs* the services of an anesthesiologist"; the record contained "no evidence that the

---

[19] *Schlotzsky's, Ltd. v. Sterling Purchasing & Nat'l Distrib. Co., Inc.*, 520 F.3d 393, 405 (5th Cir. 2008) (quoting *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 461 (1992)).

[20] 407 F.3d 332, 339-40 (5th Cir. 2005) ("If a party wishes to preserve an argument for appeal, the party must press and not merely intimate the argument during the proceedings before the district court. An argument must be raised to such a degree that the district court has an opportunity to rule on it." (citation and internal quotation marks omitted) (quoting *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 n.4 (5th Cir. 1996))).

[21] *Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2 (1984), *abrogated on other grounds by Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28 (2006).

[22] *Id.* at 4-5, 29.

[23] *Id.* at 27.

No. 20-50394

hospital 'forced' any such services on unwilling patients."[24]  The same is true here.  Shah's tying arrangement fails.

## IV

In addition to the Sherman Act claims, Shah asserted a claim for tortious interference, alleging that the BHS parties tortiously interfered with his business relationships with STAR, pediatric surgeons, and patients, and ultimately caused his termination from STAR.  A required element of a tortious interference claim under Texas law is an independently unlawful action.[25]  There is no dispute that the only alleged unlawful actions upon which Shah's tortious interference claim is premised are those underlying his Sherman Act claims.  Accordingly, as Shah acknowledges, because the Sherman Act claims fail, "so too does the tortious interference claim."

\* \* \*

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[24] *Id.* at 28 (emphasis added); *see also id.* at 43 (O'CONNOR, J., concurring) ("[T]here is no sound economic reason for treating surgery and anesthesia as separate services.  Patients are interested in purchasing anesthesia only in conjunction with hospital services, so the Hospital can acquire no *additional* market power by selling the two services together.").

[25] *D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 214 (5th Cir. 2018) (quoting *Am. Med. Int'l, Inc. v. Giurintano*, 821 S.W.2d 331, 335 (Tex. App.—Houston [14th Dist.] 1991, no writ)).