# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 16-168


MICHAEL CAL CLARY, ET UX.

VERSUS

STATE FARM MUTUAL AUTOMOBILE INS. CO., ET AL.



**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2015-2657
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE

**********

## JIMMIE C. PETERS
## JUDGE

**********

Court composed of Jimmie C. Peters, James T. Genovese, and John E. Conery, Judges.


**AFFIRMED.**


**CONERY, J., dissents and assigns reasons.**

**Hunter W. Lundy**
**Matthew E. Lundy**
**Daniel A. Kramer**
**Lundy, Lundy, Soileau & South, LLP**
**Post Office Box 3010**
**Lake Charles, Louisiana  70602-3010**
**(337) 439-0707**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
     **Michael Cal Clary**
     **Catherine Ann Hixson Clary**

**Robert J. David, Jr.**
**Alyse S. Richard**
**Juneau David APLC**
**Post Office Drawer 51268**
**Lafayette, Louisiana  70505-1268**
**(337) 269-0052**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
     **Gene Haymon**
     **David Haymon**

**Mark N. Mallery**
**Jacob C. Credeur**
**Ogletree, Deakins, Nash, Smoak & Stewart, P.C.**
**701 Poydras Street, Suite 3500**
**New Orleans, Louisiana  70139**
**(504) 648-3840**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
     **State Farm Mutual Automobile Ins. Co.**
     **State Farm Fire & Casualty Co.**
     **State Farm General Ins. Co.**
     **State Farm Life Ins. Co.**
     **State Farm VP Management Corp.**
     **State Farm Bank, F.S.B.**
     **Insurance Placement Services, Inc.**
     **Patrick White**
     **Kimberly Rollins White**

**PETERS, J.**

Michael Cal Clary and Catherine Ann Hixson Clary brought suit against a number of defendants to recover damages they claim to have suffered while acquiring and operating an insurance agency in Leesville, Vernon Parish, Louisiana. The Clarys asserted causes of action against all of the defendants in the litigation under a number of theories of recovery, and the various defendants filed two separate peremptory exceptions of no cause of action seeking only the dismissal of the damage claims arising pursuant to the Louisiana Antitrust Statute, La.R.S. 51:122 (the antitrust statute), and the Louisiana Unfair Trade Practices Act, La.R.S. 51:1401, et seq. (LUTPA). The trial court rejected both exceptions, and the defendants appealed. For the following reasons, we affirm the trial court judgment in all respects.

## PROCEDURAL STATUS OF THE LITIGATION

The Clarys, who are husband and wife, filed the petition at issue on July 2, 2015. In their petition, they named State Farm Mutual Automobile Insurance Company, State Farm Fire and Casualty Company, State Farm General Insurance Company, State Farm Life Insurance Company, State Farm VP Management Corporation, and State Farm Bank, F.S.B. (collectively referred to as "State Farm");[1] Insurance Placement Services, Inc. (Insurance Placement Services); Patrick White; Kimberly Rollins White (sometimes referred to as "Kimberly Rollins");[2] Gene Haymon; and David Haymon as defendants.

---

[1] The petition refers to State Farm in general and does not always designate which individual State Farm entity is currently being referenced. Thus, when we use the term "State Farm" we use it in the same sense as the Clarys in their petition, as a general reference to whatever State Farm entity is being represented at the time.

[2] At some time during the pendency of this litigation, Patrick White and Kimberly Rollins were married.

On August 19, 2015, State Farm, Insurance Placement Services, Patrick White, and Kimberly Rollins White (the State Farm appellants) filed a peremptory exception of no cause of action addressing the claims asserted by the Clarys involving the antitrust statute and LUTPA. Two days later, Gene and David Haymon (the Haymon appellants) filed a peremptory exception of no cause of action addressing the same two claims.

At the end of a December 16, 2015 hearing on both exceptions, the trial court took the matter under advisement. On January 12, 2016, the trial court executed a written judgment rejecting both exceptions. The written judgment also contains the following reasons for the trial court's actions:

> After reviewing the facts and relevant case law, the Court finds as follows:

> If all alleged facts are taken as true, the Petition states all the necessary elements of a violation of both the Louisiana antitrust law and the Louisiana Unfair Trade Practices Act. Therefore, Plaintiffs' Petition states a cause of action.

> While the Court does believe the Plaintiffs have stated a cause of action for both alleged violations, the Court also notes *Everything on Wheels Subaru, Inc. v. Subaru S., Inc.,* "if there are two or more items of damages or theories of recovery which arise out of the operative facts of a single transaction or occurrence, a partial judgment on an exception of no cause of action should not be rendered to dismiss one item of damages or theory of recovery." 616 So. 2d 1234 (La. 1993).

Both the State Farm appellants and the Haymon appellants timely complied with the expedited appeal provisions of La.R.S. 51:134.[3] In their separately filed appeals, the State Farm appellants and the Haymon appellants questioned only the trial court's ruling on the exceptions of no cause of action addressing the Clarys' antitrust claim. However, in the briefs submitted on appeal, both groups of

---

[3] The denial of a defendant's peremptory exception of no cause of action is not normally appealable as it is not identified as one of those judgments appealable pursuant to La.Code Civ.P. art. 1915. However, La.R.S. 51:134-35 provides an expedited appeal for certain interlocutory judgments rendered in antitrust litigation.

2

appellants joined the LUTPA issue in their assignments of error. While phrased slightly differently, the two appellant groups raised the same assignments of error: (1) the trial court erred in concluding that it could not grant an exception of no cause of action that dismissed some, but not all, of the Clarys' claims; (2) the trial court erred when it rejected the exceptions of no cause of action addressing the Clarys' claims under La.R.S. 51:122; and (3) the trial court erred when it rejected the exceptions of no cause of action addressing the Clarys' claims under LUTPA.

**FACTUAL ALLEGATIONS**
**OF THE CLARYS' PETITION (ACCEPTING THE**
**WELL-PLEADED FACTUAL ALLEGATIONS TO BE TRUE)**

In their twenty-four page petition, the Clarys sought damages against the defendants based on a number of causes of action, including breach of contract; detrimental reliance in contract; conspiracy in restraint of trade in violation of the antitrust statute; violations of LUTPA; intentional infliction of emotional distress, and conspiracy to intentionally inflict emotional distress; conspiracy to punish the Clarys for filing a complaint with the Louisiana Department of Insurance (Insurance Department), i.e., being a "whistleblower"; breach of contractual *stipulation pour autri*; and loss of consortium. All of these causes of action arise from the same factual background. Still, the only two at issue in this appeal are the antitrust and LUTPA causes of action.

The petition establishes that before contracting with State Farm to take over one of its agencies in Leesville, Louisiana, Mr. Clary had been a successful independent owner of an Allstate Insurance agency. The transition from one company to the other began in 2006 when a State Farm agency manager encouraged him to become a State Farm Insurance Agent. Between 2007 and 2011, Mr. Clary began training within the State Farm system; and given his successful training, he initially received offers to take over State Farm agency offices in either

3

Ville Platte, Louisiana, or Port Arthur, Texas. However, he declined these offers based partially on the advice of Kimberly Rollins, State Farm's vice-president of the division overseeing its Louisiana agencies. Ms. Rollins suggested that he wait for a better opportunity in Louisiana.

In February of 2011, Mr. Clary thought he had found that better opportunity when he was asked to take over Gene Haymon's State Farm agency in Leesville, Louisiana. Todd McFarland, a State Farm Agency Field Executive, contacted Mr. Clary about taking over the Leesville agency because Gene Haymon was retiring.

Being aware that Gene Haymon's son, David Haymon, was a State Farm Agency Field Executive in Columbia, Missouri, and being concerned that he might be interested in moving into an agency position in Leesville to take advantage of his father's reputation, Mr. Clary sought assurances from Mr. McFarland that his taking over Gene Haymon's agency would be free and clear of any interference from either of the Haymons. Mr. McFarland responded by stating that neither he nor State Farm would tolerate "illegal solicitation, policy raiding, or mass transfer from a new agent's book of business[.]" With this assurance, Mr. Clary agreed to take the Leesville opportunity and began the transfer process.

State Farm awarded Mr. Clary the agency, but he soon learned that State Farm had also awarded David Haymon a Leesville agency. When Jamie Eagles replaced Mr. McFarland as State Farm's Agency Field Executive in June of 2011, he called a meeting of the parties in an effort to circumvent any problems associated with the soon-to-be competing Leesville agencies. At the July 17, 2011 meeting,[4] the topic of discussion was the transition of Gene Haymon's business to the new agencies. In addressing that subject, Mr. Eagles reminded the two agents of State Farm's lack of tolerance for the solicitation of another agent's customers

---

[4] The meeting was attended by Mr. Eagles, Mr. Clary, David Haymon, and Ms. Rollins.

4

and threatened that anyone found violating the policy would have his agent's agreement with State Farm cancelled. This warning apparently had no effect on David Haymon, because as early as October of 2011 he was in Leesville soliciting policies without having yet obtained a Louisiana insurance license.

Mr. Clary executed a standard State Farm agency agreement (referred to as a "TICA Agreement") in January of 2012, and began operating Gene Haymon's former agency in Leesville. At the same time, he and David Haymon split the book of business formerly belonging to Gene Haymon's agency in accordance with the rules governing such situations. However, immediately thereafter Mr. Clary recognized that the promises of Mr. McFarland and Mr. Eagles concerning safeguards in dividing the business of the agency had not been put in place to give proper notice to the clients, as they were expressing increased dissatisfaction at being shuffled between the two agencies. The reason for the dissatisfaction became more apparent when Mr. Clary learned that Gene and David Haymon had provided all of Gene Haymon's clients with a document stating that David Haymon was taking over all of his father's business and providing the clients with instructions on how to retrieve their files from Mr. Clary.

Within the first month of operation, Mr. Clary complained to State Farm about the Haymons' violation of State Farm's policy, and Mr. Eagles called another meeting for February 1, 2012.[5] Instead of confronting David Haymon with his prohibited activity, Mr. Eagles merely reminded both sides of the previous understanding concerning the splitting of Gene Haymon's agency. When Mr. Eagles gave David Haymon no ultimatum concerning ceasing such activity, Mr. Clary threatened to report him to the Insurance Department. Ms. Rollins

---

[5] This time, Mr. White and Lindsey Cutler, both State Farm Agency Field Consultants, joined Mr. Eagles, Mr. Clary, David Haymon, and Ms. Rollins.

5

immediately responded to that threat by discouraging him from doing so and by assuring him that reporting the Haymons' activities to her was sufficient and the activities would be addressed. David Haymon did agree in the meeting to transfer five hundred automobile policies to Mr. Clary and to State Farm's suggestion that Mr. Clary be given the books of business of another agent who was expected to retire in the immediate future.

After the meeting, and as soon as he realized that State Farm was not going to force him to comply with any part of its policies designed to protect agents and agencies, David Haymon ceased transferring any automobile policies to Mr. Clary. This refusal to comply with the terms of the agreement created "mass chaos" among Mr. Clary's policy holders, and as of June 20, 2012, he had lost over half of those few customers David Haymon had transferred pursuant to the agreement.

The Haymons' anticompetitive behavior not only continued over the next twenty-four months, but accelerated. In May of 2012, Mr. Clary learned that David Haymon had lied to potential clients, telling them that Mr. Clary was holding customers against their will and that he and his father were going to put Mr. Clary out of business. Instead of supporting him when he relayed this information to her, Ms. Rollins told Mr. Clary to quit discussing the transfers and solicitations and move on past the controversy. In the months that followed, the Haymons told Mr. Clary's clients that he had stolen files from the old Haymon agency, spread the rumor that Mr. Clary was going bankrupt, and informed everyone who would listen that Mr. Clary would not be a State Farm agent for long. In fact, at one point, Gene Haymon stood up in church, called Mr. Clary a liar and thief, and told those present that he expected the members to support his son.

Not only did State Farm not support Mr. Clary in the conflict with the Haymons, but it took steps to make matters difficult in the long-term operation of

6

his agency. The TICA Agreement Mr. Clary first executed provided for an initial term running through January 31, 2013, and Mr. Clary had executed it in contemplation of executing an AAO5 contract effective January 1, 2013.[6] However, at a November 29, 2012 meeting,[7] Mr. White recapped the problems of the past few months and acknowledged that none were Mr. Clary's fault, but stated that State Farm wanted to extend the TICA Agreement rather than enter into an AAO5 contract in January 2013. Mr. White assured Mr. Clary that the new TICA Agreement was the same as he had previously signed, and that it would automatically convert to an AAO5 contract during the first quarter of 2013. Based on these assurances, Mr. Clary executed the new TICA Agreement on December 17, 2012. However, for first one reason and then another, State Farm delayed approval of Mr. Clary's AAO5 contract until January 1, 2014.

Through these first two years of operation, Mr. Clary had nothing which could explain why State Farm had such a tolerant attitude toward the Haymons. However, the picture became more clear when he attended a training session with other agents. In conversations with other agents at the training session, he learned why Gene and David Haymon could act with impunity when it came to violating State Farm's procedures and policies. According to the agents he spoke with, Gene Haymon had bragged about his power at a recent social event.

From what he was told about Gene Haymon's comments, Mr. Clary discovered that before he came into the picture, Gene Haymon thought he had "cut a deal" with Ms. Rollins to give his son the entirety of his agency when he retired; but that the "deal" was actually to benefit Mr. White and Ms. Rollins, who were

---

[6] The difference between the two contracts is that the TICA Agreement is for a set term and the AAO5 contract is a lifetime agreement.

[7] This meeting was attended by Mr. White, Lindsey Cutler, and Cliff Orso, Jr., a State Farm Development Agency Field Consultant.

romantically involved. Gene Haymon explained that when his son vacated his Missouri Agency Field Executive position, an individual in Oklahoma holding a Development Agency Field Consultant position replaced him. Mr. White then assumed the open Oklahoma Development Agency Field Consultant position, and Ms. Rollins had that position transferred to Baton Rouge, Louisiana, where she resided. Soon thereafter, Mr. White and Ms. Rollins were married.

Gene Haymon told the agents that when he became aware of the real purpose of the transfers, he used that information to gain the upper hand over Mr. White and Ms. Rollins, causing them to overlook his and his son's raiding of Mr. Clary's policies and their spreading of lies against him in the community. Gene Haymon further bragged that he was able to include two senior State Farm officials in the conspiracy by threatening to expose their involvement in illegal and unethical activities if they did not "take care of his daughter and his son."[8]

As the personal attacks and dishonest business methods continued, Mr. Clary sought assistance from a Christian counselor who encouraged him to report the situation to the Insurance Department. Following that advice, he met with Jim Donelon, the Louisiana Commissioner of Insurance, and Barry Ward, the Louisiana Deputy Commissioner of Licensing and Compliance, on December 3, 2013. In that meeting, he lodged a complaint against Gene and David Haymon, asserting that they had violated state law in operating an insurance agency without a state license and they had committed unfair trade practices. Mr. Ward's subsequent investigation of the complaint revealed that the Leesville situation was common knowledge within the State Farm organization.

The inquiry by Mr. Ward prompted Kevin Garrett, State Farm's Central Louisiana Sales Leader, to come to Mr. Clary's office on July 13, 2014. In the

---

[8] Gene Haymon's daughter is a State Farm agent residing in Arkansas.

8

conversation of that day, Mr. Garrett informed Mr. Clary that there was great concern within the State Farm organization arising from his report to the Insurance Department and that State Farm now had a "trust issue" with him. Mr. Garrett informed him that State Farm has no "black and white" process for handling disputes between agencies, and simply operates in the "gray." He further suggested that Mr. Clary's action could cause State Farm to declare him ineligible for policy assignments in the future because executives such as he could act subjectively toward agents without considering any underlying factors. Mr. Clary found these statements to be threatening and totally contrary to everything he had been told by State Farm representatives in the past, and he expressed to Mr. Garrett his displeasure in being punished because he had reported two individuals who were breaking the law.

On August 19, 2014, Mr. Clary met with Reggie Gallant[9] in New Orleans, Louisiana. Mr. Clary quickly recognized that Mr. Gallant was only interested in reprimanding him for having made a complaint to the Insurance Department. Mr. Gallant told Mr. Clary that, despite illegal activity on the part of the Haymons, State Farm wanted the entire matter to remain an internal State Farm affair. Mr. Clary expressed disagreement with State Farm's position as expressed by Mr. Gallant. As the meeting progressed, it became clear to Mr. Clary that Mr. Gallant's objective was to chastise him in hopes that he would resign as a State Farm agent, or in the alternative, drive him out of business. The meeting ended without considering any solutions to the difficulties caused by the Haymons. However, Mr. Gallant made it clear that State Farm would not tolerate Mr. Clary

---

[9] Mr. Gallant was described as a both a State Farm Regional vice-president and the vice-president of the Sales Representative Division overseeing State Farm's Louisiana agencies.

9

making complaints involving other agents or State Farm employees to the Insurance Department as State Farm reserved that right for itself.

## SPECIFIC PLEADINGS ADDRESSING
## THE CAUSES OF ACTION AT ISSUE

In additional to the factual basis previously set forth herein, the Clarys' pleadings summarize and particularly describe their antitrust cause of action with the following paragraphs:

48.

The conspiracy effected between DAVID HAYMON, GENE HAYMON, KIMBERLY ROLLINS, PATRICK WHITE and other STATE FARM officials caused the restraint of trade of MIKE CLARY and injured his ability to perform the STATE FARM marketing services in the Leesville community. Defendants' conduct clearly had an adverse effect on MIKE CLARY's ability to compete in the Leesville market. As effected, the conspiracy by these Defendants to deny MIKE CLARY the opportunity to service accounts and acquire new accounts with STATE FARM products caused MIKE CLARY to lose more than half of the estimated accounts that he was told he would have when he opened his agency, and has denied MIKE CLARY of the opportunity to accrue benefits from the beginning of January 2012 through the present and has resulted in the loss of many policies.

49.

The conspiracy among the Defendants harmed consumers by ensuring they received false information which consumers relied upon to select their insurance agents, by depriving customers of the benefits of their choice of insurance agents; and by exposing private information of consumers to those not licensed as insurance agents in Louisiana.

With regard to their LUTPA claim in particular, the Clarys' pleadings summarize and particularly describe their antitrust cause of action with the following paragraphs:

51.

The STATE FARM Defendants and their employees' actions against MIKE CLARY constitute unfair trade practices under La. R.S. 51:1405(a) in that their methods of competition, deceptive acts, and practices were unfair and unscrupulous. The Louisiana Unfair Trade

10

Practices Act ("LUTPA") is patterned after the Federal Trade Commission Act and prohibits the same type of deceptive and anti-competitive conduct is prohibited by the Federal Trade Commission Act.

52.

GENE HAYMON's acts of telling lies about MIKE CLARY, soliciting policies of MIKE CLARY and threatening other STATE FARM officials if they failed to assist his son, DAVID HAYMON, all constitute unfair trade practices.

53.

DAVID HAYMON's actions of sending out letters contrary to his contract with STATE FARM, which contained false and misleading information, particularly that these were his policies, and that STATE FARM was endorsing his letter, was clearly unfair and deceptive acts under the LUTPA.

54.

Defendants DAVID HAYMON, KIMBERLY ROLLINS and PATRICK WHITE's actions in manipulating jobs and positions to appease GENE HAYMON so his son, DAVID HAYMON could take over GENE HAYMON's STATE FARM agency and give up his AFE position in Missouri; along with KIMBERLY ROLLINS and PATRICK WHITE participating in the strategic maneuvering in order to help DAVID HAYMON take his father's STATE FARM agency and policies, deny MIKE CLARY his promised book of business, and to enable PATRICK WHITE and KIMBERLY ROLLINS to continue to work for STATE FARM in the same city and live in the same residence was unethical, unscrupulous and deceptive, all in violation of LUTPA.

55.

As recently as June, 2015, STATE FARM has denied and cutoff MIKE CLARY from access to and use of STATE FARM's computer based business development leads which historically have been available to all STATE FARM agents. When questioned by MIKE CLARY, Kevin Garrett of STATE FARM was unable or refused to explain why MIKE CLARY could no longer access these business development leads ostensibly available to all STATE FARM agents.

**OPINION**

The function of the peremptory exception of no cause of action as authorized by La.Code Civ.P. art. 927(A)(5) is to "test the legal sufficiency of the petition by

11

determining whether the law affords a remedy on the facts" that are alleged in the petition. *Everything on Wheels Subaru, Inc. v. Subaru S., Inc.*, 616 So.2d 1234, 1235 (La.1993). "No evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action." La.Code Civ.P. art. 931. As stated in *Industrial Cos., Inc. v. Durbin*, 02-665, p. 7 (La. 1/28/03), 837 So.2d 1207, 1213, "[e]very reasonable interpretation must be accorded the language of the petition in favor of maintaining its sufficiency and affording the plaintiff the opportunity of presenting evidence at trial."

Because the peremptory exception of no cause of action "raises a question of law and the lower court's decision is necessarily based solely on the sufficiency of the petition[,]" we review the grant of the exception under a *de novo* standard. *State, Div. of Admin., Office of Facility Planning & Control v. Infinity Sur. Agency, L.L.C.*, 10-2264, p. 9 (La. 5/10/11), 63 So.3d 940, 946. Additionally, "for the purposes of determining the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true. Simply, if the petition alleges sufficient facts to establish a case cognizable in law, an exception of no cause of action must fail." *Jones v. Tezeno*, 99-1693, p. 4 (La.App. 3 Cir. 3/1/00), 758 So.2d 896, 899 (citations omitted).

Although "Louisiana is a fact pleading state" that does not mean that a plaintiff must "set forth every possible theory of recovery[.]" *State ex rel. Ieyoub v. Racetrac Petroleum, Inc.*, 01-458, p. 5 (La.App. 3 Cir. 6/20/01), 790 So.2d 673, 678 (internal quotation marks omitted). Instead, the plaintiff "must set forth the facts of his claim." *Id.* At the same time, "to reach the truth, and to avoid the application of harsh, technical rules of pleading; at a minimum, the plaintiff must plead bare bone facts, which if taken as true, state a cause of action." *Id.*

In their first assignments of error, the State Farm appellants and the Haymon appellants both argue that the trial court erred when it inserted the following language in its judgment.

> While the Court does believe the Plaintiffs have stated a cause of action for both alleged violations, the Court also notes *Everything on Wheels Subaru, Inc. v. Subaru S., Inc.,* "if there are two or more items of damages or theories of recovery which arise out of the operative facts of a single transaction or occurrence, a partial judgment on an exception of no cause of action should not be rendered to dismiss one item of damages or theory of recovery. 616 So. 2d 1234 (La. 1993).

Specifically, they argue that the Louisiana Legislature legislatively overruled the holding in *Everything on Wheels*, 616 So.2d 1234, in 2003 when it amended La.Code Civ.P. art. 934 to read as follows:

> When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection raised through the exception cannot be so removed, or if the plaintiff fails to comply with the order to amend, the action, claim, demand, issue, or theory shall be dismissed.

While we find the trial court's statement in its judgment with regard to the holding of the supreme court in the *Everything on Wheels* decision to be erroneous, we note that it is mere dicta and, therefore, harmless error. Specifically, the trial court made it clear that the Clarys stated a cause of action for both the antitrust claim and the LUTPA claim, and that the decision in *Everything on Wheels* did not affect its ultimate judgment.

*Assignment of Error Number Two*

In this assignment of error, the State Farm appellants and the Haymon appellants argue that the trial court erred in rejecting their peremptory exceptions

of no cause of action as it related to the Clarys' antitrust claim under La.R.S. 51:122.

Louisiana Revised Statutes 51:122(A) provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce in this state is illegal." Furthermore, both "[t]he federal and state antitrust laws were intended to be sweeping in breadth, encompassing every conspiracy, contract or combination that restrains trade." *Plaquemine Marine, Inc. v. Mercury Marine*, 03-1036, p. 9 (La.App. 1 Cir. 7/25/03), 859 So.2d 110, 118. In order to assert a claim under La.R.S. 51:122, a plaintiff must assert that the activity purporting to violate the statute must result "in an unreasonable restraint of trade." *Id.* At the same time, "[n]ot every business arrangement that restrains trade in some manner is illegal[.]" *Id.*

Claims of restraints against trade fall into two categories: horizontal or vertical. "Horizontal combinations are those between competitors that restrain enterprises at the same level of distribution. Vertical combinations, on the other hand, are imposed by persons at different levels of distribution, usually by one higher up the distribution chain than the party restrained." *Id.* at 117-18. In the matter before us, the parties agree that the Clarys' claim is that of a vertical restraint against trade. "When a vertical conspiracy is alleged, plaintiffs must show that the restraint of trade violates the 'rule of reason.' Under this rule, the fact-finder weighs all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition." *Id.* at 118.

With regard to the burden of proof in a claim requiring a rule of reason analysis, "both federal and Louisiana law requires proof of three elements: that the defendants (1) engaged in a conspiracy (2) that restrained trade or injured

14

competition (3) in a particular market." *Van Hoose v. Gravois*, 11-976, p. 8 (La.App. 1 Cir. 7/7/11), 70 So.3d 1017, 1022.

The Clarys assert a conspiracy between an individual no longer affiliated with State Farm (Gene Haymon), a current State Farm agent (David Haymon), two State Farm regional executives (Patrick White and Kimberly Rollins), and a number of State Farm entities having supervision of all of the other defendants except Gene Haymon. Accepting the well-pleaded allegations of the Clarys' petition to be true, we find the pleadings establish that State Farm recruited Mr. Clary to be a State Farm agent and ultimately offered him Gene Haymon's Leesville, Louisiana, agency upon Gene Haymon's retirement. Thereafter, Gene Haymon and the remaining defendants conspired to interfere with Mr. Clary's takeover of the agency by allowing the Haymons to threaten, lie to, and encourage clients in the Leesville community to transfer their policies away from Mr. Clary in an effort, not only to move the business to David Haymon's new agency, but to drive Mr. Clary out of business. State Farm, through its field agents and executives, not only condoned the Haymons' activities, but joined in the efforts. We find that the pleadings, when taken as true, establish a conspiracy among the various defendants.

With regard to the restrained trade or injured competition element of an antitrust cause of action, we first recognize that "antitrust laws are for the protection of competition[,]" and "[a] claim under LSA-R.S. 51:122 must include an allegation of damage to competition." *Plaquemine Marine, Inc.*, 859 So.2d at 118. Furthermore, La.R.S. 51:122 is "virtually identical" to the corresponding section "of the Sherman Antitrust Act, 15 U.S.C. § 1 et seq., and federal analysis of the Sherman Antitrust Act is persuasive, though not controlling." *Id.* at 117.

15

The importance of the assertion of damage to competition in an antitrust claim was explained in *JetAway Aviation, LLC v. Board of County Commissioners of County of Montrose, Colorado*, 754 F.3d 824, 835 (10th Cir. 2014), wherein the federal appeals court explained that "the Sherman Act is not concerned with overly aggressive business practices, or even conduct that is otherwise illegal, so long as it does not unfairly harm competition." The fact that other state and federal laws govern this otherwise offensive and/or illegal activity explains the lack of concern expressed in the antitrust legislation.

> Thus, consonant with the Sherman Act's statutory concerns, "[t]he antitrust injury requirement ensures that a plaintiff can recover only if [its injury] stems from a competition-*reducing* aspect or effect of the defendant's behavior." *Elliott Indus.* [*Ltd. P'ship v. BP Am. Prod. Co.*], 407 F.3d [1091,] 1124-25 [10th Cir. 2005] (first alteration in original) (quoting *Atl. Richfield Co.* [*v. USA Petroleum Co.*], 495 U.S. [328,] 344, 110 S.Ct. 1884[, 1894 (1990)]) (internal quotation marks omitted)[.]

*Id.* (first and second alternation in original).

Thus, no matter how egregious the facts giving rise to the claim of conspiracy, if the petition fails to allege a corresponding injury to competition or restraint of specific trade activity, the claimant fails to state a cause of action for damages under La.R.S. 51:122.

The Clarys thread the general effect on competition through the pleading setting forth the factual basis. Specifically, the conspiratorial activities not only caused the Clarys personal injury, but it also created "mass chaos" among the policy holders who did not know how to respond to the lies and misinformation being spread by the Haymons; and while the conspiracy was aimed at disrupting Mr. Clary's ability to function as a State Farm agent, it also had the effect of depriving clients and potential clients of the protections afforded them in making personal insurance decisions. Clearly, the Clarys' injury arises from actions by the

defendants that have the effect of reducing competition in the insurance field. We find that the pleadings, when taken as true, establish that the conspiratorial activities of the defendants restrained trade and injured competition.

Finally, the pleadings must establish a particular market affected by the conspiratorial activity.

> Under the rule of reason, as applied to Sherman Act cases, proof that a defendant's activities adversely affected competition in the appropriate product and geographic markets is essential to recovery. *Doctor's Hospital of Jefferson, Inc. v. Southeast Medical Alliance, Inc.*, 123 F.3d 301, 307 (5th Cir.1997). The relevant market has both geographic dimensions and product dimensions. *Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.*, 732 F.2d 480, 487 (5th Cir.1984). The relevant market includes a geographic market, which is the section of the country in which sellers of a particular product operate, as well as the product market, which encompasses the differences among various commodities and the willingness of buyers to substitute one product for another. *Plaquemine Marine, Inc.*, 859 So.2d at 120. A proposed product market must include all commodities reasonably interchangeable by consumers for the same purposes. *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395, 76 S.Ct. 994, 100 L.Ed.2d 1264 (1956). The market is established by examining the substitutes that a consumer might employ and the extent to which consumers will change their consumption of one product in response to a price change in another, i.e., the cross-elasticity of demand. *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 469, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992).

*HPC Biologicals, Inc. v. UnitedHealthcare of La., Inc.*, 16-585, p. 10 (La.App. 1 Cir. 5/26/16), 194 So.3d 784, 794.

The pleadings, when accepted as true, reflect that the conspiratorial activities of the defendants restrained Mr. Clary and injured his ability to perform State Farm marketing services in the Leesville community and the Leesville insurance market. Not only was his ability to service accounts of the agency he took over harmed, but the same could be said for his ability to acquire new accounts. The lies and misinformation spread within the community prevented consumers from making informed decisions with regard to their insurance needs, and some of the information they were provided was from a yet-to-be licensed agent. Accepting

17

the pleadings as true, we find that the Clarys did establish that the conspiratorial activities of the defendants restrained trade and injured competition with a product and geographical market of Leesville, Louisiana.

Considering the record before us, we find that the Clarys' pleadings state a cause of action for a violation of La.R.S. 51:122. Therefore, we find no merit in this assignment of error.

### *Assignment of Error Number Three*

In this assignment of error, the State Farm appellants and the Haymon appellants argue that the trial court erred in rejecting their peremptory exception of no cause of action as it related to the Clarys' LUTPA claim pursuant to La.R.S. 51:1401, et seq.

Louisiana Revised Statutes 51:1405(A) states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

> The Louisiana Unfair Trade Practices Act, La. R.S. 51:1401, *et seq.*, does not enumerate those instances of conduct that constitute unfair trade practices, but La. R.S. 51:1405(A) provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." This Court has noted that the LUTPA is patterned after the Federal Trade Commission Act and prohibits the same type of deceptive and anticompetitive conduct as prohibited by the Federal Trade Commission Act. *Capitol House Preservation Co., LLC v. Perryman Consultants, Inc.*, 2008-0367 (La.App. 1st Cir.8/28/09), 47 So.3d 408, 417, *writ denied*, 2009-2638 (La.2/12/10), 27 So.3d 856, *cert. denied*, --- U.S. ---, 131 S.Ct. 104, 178 L.Ed.2d 30 (2010). Therefore, in interpreting Louisiana's statute, a court must consider how the Federal Trade Commission and the federal courts have applied the Federal Trade Commission Act to various types of conduct. *Id.* Under the Federal Trade Commission Act, vertical territorial and customer restrictions are not prohibited absent a showing of injury to competition. *Red Diamond Supply, Inc.* [*v. Liquid Carbonic Corp.*], 637 F.2d [1001,] 1008 [(5th Cir.), *cert. denied*, 454 U.S. 827, 102 S.Ct. 119 (1981)]. In addition, the U.S. Fifth Circuit has noted that "the real thrust of the LUTPA, modeled after the Federal Trade Commission Act, ... is to deter injury to competition." *Reingold v. Swiftships, Inc.* 126 F.3d 645, 652 (5th Cir.1997) (quoting *Omnitech*

*International, Inc. v. Clorox Company*, 11 F.3d 1316, 1331 (5th Cir.),
*cert. denied*, 513 U.S. 815, 115 S.Ct. 71, 130 L.Ed.2d 26 (1994)).

*Van Hoose*, 70 So.3d at 1023-24 (first alteration in original).

As previously discussed regarding the antitrust claim, the Clarys have adequately alleged injury to competition in this matter. That being the case, we find that they have stated a cause of action under LUTPA as well. We find no merit in this assignment of error.

## DISPOSITION

For the foregoing reasons, we affirm the trial court's denial of the defendants' peremptory exceptions of no cause of action directed at the claims of Michael Cal Clary and Catherine Ann Hixson Clary arising under the Louisiana Antitrust Statute, La.R.S. 51:122, and the Louisiana Unfair Trade Practices Act, La.R.S. 51:1401, et seq. We assess all costs of this appeal to the defendants, State Farm Mutual Automobile Insurance Company, State Farm Fire and Casualty Company, State Farm General Insurance Company, State Farm Life Insurance Company, State Farm VP Management Corporation, State Farm Bank, F.S.B, Insurance Placement Services, Inc., Patrick White, Kimberly Rollins White, Gene Haymon, and David Haymon.

**AFFIRMED.**

NUMBER 16-168

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

MICHAEL CAL CLARY, ET UX

VERSUS

STATE FARM MUTUAL AUTOMOBILE INS. CO. ETC., ET AL.

**CONERY, J., dissents and assigns reasons.**

I would reverse the trial court's ruling denying the Defendants' peremptory exception of no cause of action pursuant to the Louisiana Antitrust Statute, La.R.S. 51:122. Further, I would find that trial court's judgment denying the Defendants' peremptory exception of no cause of action seeking to dismiss the Clarys' claim pursuant to La.R.S. 51:1406, the LUTPA claim, is not a final judgment, but instead an interlocutory judgment which is not subject to appeal. La.Code Civ.P art. 2083.

## FACTS AND PROCEDURAL HISTORY

As the majority comprehensively summarized, this case involves a dispute over the transition of the business of Gene Haymon's State Farm Insurance Agency in Leesville, Louisiana which was occasioned by his decision to retire. Michael Clary was recruited by State Farm to take over the Haymon Agency. Mr. Clary knew that David Haymon, Gene's son and a State Farm Agency Field Executive (AFE) in Missouri, was also planning to return to Louisiana to become an agent.

Mr. Clary claimed that he received assurances from Todd McFarland, the State Farm Bayou Agency Field Office AFE, that steps would be taken by State

Farm to assure that Mr. Clary would be treated fairly in the transition of the insurance policies of the customers of the Haymon Agency. In reliance on the assurances of Mr. McFarland and further assurances by Ms. Kimberly Rollins, State Farm's Vice President of Agency, Mr. Clary remained in Louisiana and accepted the position in Leesville. The agreement signed by Mr. Clary involved a division of Mr. Haymon's book of business between Mr. Clary and Gene Haymon.

From the outset, problems with the arrangement begin to surface, which eventually led to the Clarys filing suit against the Defendants alleging multiple claims, including conspiracy to violate and breach the State Farm contracts, defamation causing intentional infliction of emotional distress, violation of the insurance whistleblower statute, breach of contractual *stipulation pour autri*, detrimental reliance, loss of consortium, as well as a violation of La.R.S. 51:122, the Louisiana Antitrust Statute, and La.R.S. 51:1406, LUTPA.

The Defendants responded by filing peremptory exceptions of no cause of action seeking to dismiss the Clarys' claims pursuant to La.R.S. 51:122, the Louisiana Antitrust Statute, and LUTPA, La.R.S. 51:1406. The trial court heard the Defendants' exceptions on December 16, 2015, took the matter under advisement, and issued its judgment on January 12, 2016, denying the Defendants' peremptory exceptions of no cause of action pursuant to La.R.S. 51:122, the Louisiana Antitrust Statute, and La.R.S. 51:1406, LUTPA. Defendants timely filed an expedited appeal on both issues.

2

## JURISDICTION ON APPEAL

### *Appeal of the Denial of the Peremptory Exception of No Cause of Action Pursuant To Louisiana's Antitrust Statute, La.R.S. 51:122*

This court cannot determine the merits of an appeal unless there is jurisdiction which is properly invoked by a valid final judgment. La.Code Civ.P. art. 2083. The denial of the Defendants' peremptory exception of no cause of action seeking to dismiss the Clarys' claims pursuant to Louisiana's Antitrust Statute, La.R.S. 51:122, is not normally appealable.[1]

However, special jurisdiction allowing the appeal of the denial of a peremptory exception of no cause of action seeking to dismiss an antitrust claim is based on La.R.S. 51:134-135. *See Van Hoose v. Gravois*, 11-976 (La.App. 1 Cir 7/7/11), 70 So. 3d 1017, 1021.[2] The Defendants have timely complied with the expedited appeal delays of the trial court's judgment of January 16, 2016. Therefore, I agree with the majority that this court has the necessary jurisdiction on

---

[1] Louisiana Code of Civil Procedure Article 1915 provides this court with the jurisdictional basis for appeal in general. It was revised by the legislature effective August 1, 2013, and that version of the article is applicable to this court's determination of jurisdiction.

[2] Louisiana Revised Statutes 51:134 provides:

> In all cases under this Part the defendant shall file all exceptions in limine litis, or if necessary in the alternative, after the usual delays, and any additional delays as the court may allow; however, a plea to the jurisdiction is not waived by other pleas or exceptions filed. The judge shall take up such exceptions in preference over all other business and shall decide all questions raised in the exceptions within ten days after submission, and his ruling shall have the effect of res judicata, unless the party cast shall appeal within five days. The appeal is returnable within ten days to the appellate court which shall hear and determine the case within forty days. If the exceptions are overruled by final judgment of the appellate court, the defendant shall file his answer covering all questions of controverted fact within fifteen days, and the case may be set for trial on the application of either party, which case the judge shall consider in preference over all other business.

appeal to review *de novo* the denial of the Clarys' claims against the Defendants for violation of Louisiana's Antitrust Statute, La.R.S. 51:122.

***Appeal of the Denial of the Peremptory Exception of No Cause of Action Pursuant to Louisiana's Unfair Trade Practices Act, La. R.S. 51:1405***

The Defendants have also appealed the denial of their peremptory exception of no cause of action seeking to dismiss the Clarys' claims pursuant to La.R.S. 51:1406, LUTPA. Louisiana Revised Statutes 51:1405(B) provides, in pertinent part, the rule governing an appeal from the district court in a LUTPA claim, "Appeals may be had from any ruling of a district court in accordance with the Code of Civil Procedure, except that such appeals shall be given preference and heard in priority to other appeals."

Once again, this court cannot determine the merits of an appeal unless there is jurisdiction which is properly invoked by a valid final judgment, pursuant to Louisiana Code of Civil Procedure Article 2083. The procedure for determining whether an exception sustained in part when it only partially dismisses the claims against a party is appealable is found in La.Code Civ.P. art. 1915(B)(1),[3] which provides:

> When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories against a party, whether in an original demand, reconventional demand, cross-claim, third-party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.

Louisiana Code of Civil Procedure Article 1915 (B)(2) further provides:

> In the absence of such a determination and designation, any such order or decision shall not constitute a final judgment for the purpose of an immediate appeal and may be revised at any time prior

---

[3]Louisiana Code of Civil Procedure Article 1915 was revised by the legislature effective August 1, 2013, and that version of the article is applicable to this court's determination of jurisdiction.

to rendition of the judgment adjudicating all the claims and the rights and liabilities of all the parties.

The January 12, 2016 judgment of the trial court did not designate the denial of the Defendants' peremptory exception of no cause of action seeking to dismiss the Clarys' claims pursuant to the LUTPA as a "final judgment." Therefore, I would find it is not a final judgment, but an interlocutory ruling pursuant to La.Code Civ.P. art. 2083(C), which provides, "An interlocutory judgment is appealable only when expressly provided by law." The official revision comments to La.Code Civ.P art. 2083 provide that, "Judgments overruling the following exceptions have been held to be interlocutory and unappealable: exceptions of no right or cause of action."

Defendants cite *Van Hoose*, which cited two cases addressing LUTPA claims along with antitrust claims on appeal. In reviewing the two cases cited in support of the conclusion in *Van Hoose*, I would find that neither support this court's jurisdiction to review on appeal the Clarys' LUTPA claim.

In *Southern Tool & Supply, Inc. v. Beerman Precision, Inc.*, 03-960 (La. App 4 Cir. 11/26/03), 862 So.2d 271, *writs denied*, 03-3481 (La. 3/1/04), 869 So.2d 821, 03-3518 (La. 3/12/04), 869 So.2d 825, 03-3536 (La. 3/1/04), 869 So.2d 826, the court of appeal did not address the issue of jurisdiction on appeal over the plaintiff's LUTPA claim. The court only considered the trial court's reasons for ruling, which collectively referred to paragraphs eighteen to twenty four of the plaintiff's petition. The appeal court addressed each of plaintiff's three causes of action separately, i.e. claims made under La.R.S. 51:122-123 of the Louisiana antitrust laws, and La.R.S. 51:1406, the LUTPA claim. However, in its discussion

5

of the peremptory exception of no cause of action for the plaintiffs' LUTPA claim, there was no discussion of the court's basis for jurisdiction.

In J*efferson v. Chevron U.S.A. Inc.*, 97-2436 (La.App 4 Cir. 5/20/98) 98-254 (La.App. 4 Cir 5/20 98), 713 So.2d 785, *writ denied*, 98-1681 (La. 10/16/98), 727 So.2d 441, the court of appeal found that La.R.S. 51:135 provided for an expedited appeal from the trial court's denial of the defendant's motion for summary judgment. The court of appeal also found "the appellate jurisdiction conferred by [La.R.S.] 51:135 applied specifically to antitrust claims, and absent irreparable injury, defendant had no right to appeal the denial of the summary judgment as to plaintiffs' non-antitrust claims. La.Code Civ.P art. 2083." *Jefferson*, 713 So.2d at 787. However, the Defendant's sought supervisory writs for the non-antitrust claims and the appeal court consolidated the writ applications on appeal. Therefore, the antitrust claims and the non-antitrust claims were considered in the same appeal, "albeit through separate procedural vehicles." J*efferson*, 713 So.2d at 787.

In *Van Hoose*, the first circuit determined that based on the forgoing jurisprudence, "in the event that the Court does not have appellate jurisdiction over the LUTPA claim, we choose to exercise our supervisory jurisdiction pursuant to Louisiana Constitution of 1974 Article V, § 10(A).[4] However, in *Fontenot v. Miss*

---

[4]Louisiana Constitution of 1974 Article V, § 10(A) provided (emphasis added):

**Jurisdiction.** Except as otherwise provided by this constitution, a court of appeal has appellate jurisdiction of (1) all civil matters, including direct review of administrative agency determinations in worker's compensation matters as heretofore or hereafter provided by law, (2) all matters appealed from family and juvenile courts, and (3) all criminal cases triable by a jury, except as provided in Section 5, Paragraph (D)(2) of this Article. **It has supervisory jurisdiction over cases which arise within its circuit.**

*Cathie's Plantation, Inc.*, 634 So.2d 1380, 1381 (La.App. 3 Cir. 1994), this court stated:

> A denial of an exception of no cause of action is interlocutory and not appealable where there is no showing of irreparable harm. La.C.C.P. arts. 1841, 2083; *Wallace v. Pan American Fire & Casualty Ins. Co.,* 386 So.2d 158 (La.App. 3d Cir.1980). Merely requiring the parties to go to trial does not constitute irreparable injury. The test for determining whether an interlocutory judgment may cause irreparable harm is whether the procedural error will have such an effect on the merits of the case that the appellate court cannot correct an erroneous decision on the merits. *Bernard v. Allstate Ins. Co.,* 396 So.2d 548 (La.App. 3d Cir.1981). We think in this case it would not.

The Clarys have, as stated above, lodged a total of eight separate causes of action against the Defendants, including their claim made under LUTPA. I would therefore find, as did the court in *Fontenot*, that the denial of the trial court of the Defendants' peremptory exception of no cause of action seeking to dismiss the Clarys' LUTPA claim will not "cause irreparable harm." Therefore, pursuant to La.Code Civ.P. art. 2083, I would dismiss the appeal of the trial court's interlocutory judgment denying the Defendants' peremptory exception of no cause of action seeking the dismissal of the Clarys' claim under the LUTPA.

## ASSIGNMENTS OF ERROR

The two assignments of error on appeal related to the Clarys' claim pursuant to the Louisiana Antitrust Statute, La.R.S. 51:122, are as follows:

I.  The trial court erred when it decided that it could not grant an exception of no cause of action that dismissed some, but not all, of these plaintiffs' claims.

II. The trial court erred when it overruled/denied Appellants Exception of No Cause of Action as to Appellees' restraint of trade claim under La.Rev. Stat. § 51:122.

7

***Assignment of Error One - Reliance by the Trial Court on the Louisiana Supreme Case of Everything on Wheels v. Subaru S. Inc., 616 So.2d 1234 (La.1993).***

In their first assignment of error, the Defendants claim that the trial court committed an error of law in finding and stating in its judgment:

> While the Court does believe the Plaintiffs have stated a cause of action for both alleged violations, the Court also notes *Everything on Wheels Subaru, Inc. v. Subaru S., Inc.,* "if there are two or more items of damages or theories of recovery which arise out of the operative facts of a single transaction or occurrence, a partial judgment on an exception of no cause of action should not be rendered to dismiss one item of damages or theory of recovery." [*Everything on Wheels v. Subaru S. Inc.,*] 616 So.2d 1234(La.1993).

After the *Everything on Wheels* ruling by the supreme court was rendered, the legislature amended La.Code Civ.P. art. 934 in 2003 to state as follows:

> When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection raised through the exception cannot be so removed, or if the plaintiff fails to comply with the order to amend, the action, claim, demand, issue, or theory shall be dismissed.

The comment to the 2003 amendment of La.Code Civ.P. art. 934 specifically states:

> The purpose of the 2003 amendment to this Article is to clarify that pursuant to Article 1915(B) the trial court can now render a partial judgment sustaining an exception in part as to one or more but less than all of the actions, claims, demands, issues, or theories in the case. When an exception is sustained to less than all the claims, demands, issues or theories in an action, the judgment shall not constitute a final judgment unless it is designated as such after an express determination that there is no just reason for delay.

More recently, a panel of this court discussed the application of the peremptory exception of no cause of action in affirming the dismissal of the plaintiff's bystander damages claim and stated:

> A partial judgment on an exception of no cause of action should not

8

be rendered to dismiss only one theory of recovery out of several within a single cause of action. *Everything on Wheels Subaru, Inc. v. Subaru S., Inc.,* 616 So.2d 1234 (La.1993). However, a partial judgment on an exception of no cause of action may be rendered to dismiss one of several separate causes of action. *Id.* In determining whether a claim can be properly dismissed through an exception of no cause of action, then, it is necessary to determine whether that claim is an alternate theory of recovery or an independent cause of action.

*Castille v. La. Medical Mut. Ins. Co*., 14-519, pp. 3-4 (La.App. 3 Cir. 11/5/14), 150 So.3d 614, 618.

In their petition, the Clarys stated a total of eight separate causes of action including the one remaining at issue on appeal, "**C. Third Cause of Action – Conspiracy in Restraint of Trade in Violation of the Louisiana Anti-Trust Statute**[,]" claiming that the Defendants have violated La.R.S. 51:122.

The Clarys' other causes of action include the following:

A. **First Cause of Action-Detrimental Reliance**

B. **Second Cause of Action – Breach of Contract**

D. **Fourth Cause of Action – Violation of the Louisiana Unfair Trade Practices Act,**

E. **Fifth cause of Action/Intentional Inflection of Emotional Distress and Conspiracy to Intetionally Inflict Emotional Distress**

F. **Sixth Cause of Action/Whistleblower**

G. **Seventh Cause of Action - Breach of Contract *Stipulation Pour Autri***

H. **Eighth Cause of Action- Loss of Consortium**

Louisiana Revised Statutes 51:122, Louisiana's Antitrust Statute, clearly allows for an independent cause of action, separate and apart from the other claims made by the Clarys in their petition. Louisiana Revised Statutes 51:134 mandates that adverse rulings made by a trial court under this statute are subject to

immediate appeal, with shortened deadlines for appeal. The basis of this court's appellate jurisdiction in this case provides that failure to comply with the required appeal deadlines "shall have the effect of res judicata, unless the party cast shall appeal within five days." La.R.S. 51:134.

Obviously, the statute contemplates that a claim made under La.R.S. 51:122 is capable of being dismissed by way of a peremptory exception of no cause of action, without dismissing the plaintiff's remaining claims. Therefore, the trial court committed an error of law in denying the Defendants peremptory exception of no cause of action pursuant to La.R.S. 51:122, on that basis. I join the majority's decision on this narrow issue that the trial court committed legal error in denying the exception on this basis alone. I further agree with the majority's view that the appeal of the denial of the exception based on the provisions of La.R.S. 51:134 as discussed infra is proper and we do have jurisdiction over that issue on appeal.

### Assignment of Error Two – The Clarys' Failed To State A Cause Of Action Pursuant to La.R.S. 51:122, The Louisiana Antitrust Statute

The Clarys' claim under Louisiana's Antitrust Statute, La.R.S. 51:122, is found in paragraphs forty-eight through fifty of their petition which states:

**48.**

### C. Third Cause of Action - Conspiracy in Restraint of Trade in Violation of the Louisiana Antitrust Statute

The conspiracy effected between DAVID HAYMON, GENE HAYMON, KIMBERLY ROLLINS, PATRICK WHITE and other STATE FARM officials caused the restraint of trade of MIKE CLARY and injured his ability to perform the STATE FARM marketing services in the Leesville community. Defendants' conduct clearly had an adverse effect on MIKE CLARY'S ability to compete in the Leesville market. As effected, the conspiracy by these Defendants to deny MIKE CLARY the opportunity to service accounts and acquire new accounts that he was told he would have

10

when he opened his agency, and had denied MIKE CLARY of the opportunity to accrue benefits from the beginning of January 2012 through the present and had resulted in the loss of many policies.

**49.**

The conspiracy among the Defendants harmed consumers by ensuring they received false information which consumers relied upon to select their insurance agents, by depriving customers of the benefits of their choice of insurance agents; and by exposing private information of consumers to those not licensed as insurance agents in Louisiana.

**50.**

The actions of Defendants constitute violations of the Louisiana Anti-Trust Statute which provides: "every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce in this state is illegal." Accordingly, MIKE CLARY is entitled to treble damages, costs, and reasonable attorney fees as a result of the breach of La. R.S. 51:122.

*Louisiana Revised Statutes 51:122*

Louisiana Revised Statutes 51:122, Louisiana's Antitrust Statute states:

A. Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce in this state is illegal.

B. Whoever violates this Section shall be fined not more than five thousand dollars, or imprisoned, with or without hard labor, not more than three years, or both.

C. For purposes of this Title, a parent corporation, limited liability company, partnership, or partnership-in-commendam is not capable of conspiring with any subsidiary that it controls, and each such controlled subsidiary is not capable of conspiring with any other wholly owned subsidiary controlled by the same common parent.

D. For the purposes of this Part only, an officer or employee of a legal entity is not capable of conspiring with the legal entity or with another officer or employee of the legal entity when they are acting on behalf of the entity.

In *Van Hoose*, which also involved a dispute between insurance agents and

their insurance agencies, a panel of our sister circuit stated:

The federal and state antitrust laws were intended to be sweeping in breadth, encompassing every conspiracy, contract, or combination that restrains trade. *Louisiana Power & Light Co. v. United Gas Pipe Line Co.*, 493 So.2d 1149, 1154-55 & n. 12 (La.1986). Not every business arrangement that restrains trade in some manner is illegal, however. The first step in analyzing an agreement to restrain trade is to determine whether it should be categorized as horizontal or vertical.

*Van Hoose*, 70 So.3d at 1022.

All parties agree that this case involves a vertical restraint of trade which was defined in *Plaquemine Marine, Inc. v. Mercury Marine*, 03-1036 (La.App 1 Cir. 7/25/03), 859 So.2d 110 as follows, "A vertical restraint is imposed by persons at different levels of distribution, usually by one higher up in the distribution chain than the party restrained. When a vertical conspiracy is alleged, plaintiffs must show that the restraint of trade violates the 'rule of reason.'" *Plaquemine Marine, Inc.*, 859 So.2d at 118. "The rule of reason analysis under both federal and Louisiana law requires proof of three elements: that the defendants (1) engaged in a conspiracy (2) that restrained trade or injured competition (3) in a particular market." *Van Hoose*, 70 So.3d at 1022.

The rule of reason and its application to the analysis of an antitrust claim under La.R.S. 51:122 requires that a plaintiff must "include an allegation of damage to competition" in the petition "which cannot be met by broad allegations of harm to the 'market' as an abstract entity." *Plaquemine Marine*, 859 So.2d at 118.

Under our system of fact-pleading, a plaintiff is required to state "material facts that form the basis for the asserted cause of action." *Van Hoose*, 70 So. 2d at 1023. This requirement is equally if not more important in stating a claim for an antitrust violation, as "A mere conclusion unsupported by material facts does not set forth a cause of action; therefore, conclusory statements of fact or formulaic

12

recitations of the elements of an antitrust violations are insufficient to state a claim." *Id.* at 1023.

### *Allegations in the Clarys' Petition*

In this case, the Clarys allege in their petition at paragraph forty-eight that the Defendants "caused the restraint of trade of MIKE CLARY and injured his ability to perform the STATE FARM marketing services in the Leesville community." This conduct by the Defendants "clearly had an adverse effect on MIKE CLARY'S ability to compete in the Leesville market," and denied "MIKE CLARY the opportunity to service and acquire new accounts with STATE Farm products . . . and to lose more than half of the estimated accounts he was told he would have when he opened his agency."

Paragraph forty-nine of the Clarys' petition states that consumers were harmed by the Defendants' conspiracy by receiving "false information which consumers relied on to select their insurance agents," deprived them of "the choice of insurance agents." Finally, "by exposing private information of consumers to those not licensed as insurance agents in Louisiana."

### *Failure to Allege an Allegation of Damage to Competition*

In order for Mr. Clary to state a claim under La.R.S. 51:122, his petition "must include an allegation of damage to competition." *Plaquemine Marine*, 859 So.2d at 118. The allegations made in his petition only state that Mr. Clary was restrained from performing State Farm marketing services in the Leesville community, which had an "adverse effect" on both his opportunity to compete and service new accounts in the Leesville market, which resulted in Mr. Clary suffering a financial loss. Therefore, the only injuries plead by the Clarys is to themselves and not injury to competition as required to support an antitrust claim.

Even though the Clarys' claim that insurance consumers were harmed by the false statements made by the Defendants, which deprived them of their "choice of insurance agents," there are no facts to support this conclusion or to indicate that any of the consumers were deprived of their ability to choose or change insurance agencies, which would support an "allegation of damage to competition." *Plaquemine Marine*, 859 So.2d at 118.

Therefore, I would find based on a *de novo* review of the record that the Clarys have failed to state a claim pursuant to La.R.S. 51:122, the Louisiana Antitrust Statute, by only pleading injury to Mr. Clary and his business relationship with State Farm, and failing to allege "facts to indicate that anyone other than themselves was [actually] injured" by the dealings between the Clarys and the Defendants. *Plaquemine Marine Inc.*, 859 So.2d at 119. Accordingly, I would reverse the judgment of the trial court denying the Defendants' peremptory exception of no cause of action claim pursuant to La.R.S. 51:122, the Louisiana Antitrust Statute.

## CONCLUSION

Pursuant to the requirements of La.Code Civ.P. art. 934, were this a majority opinion, this case would have to be remanded in order for the Clarys to be afforded an opportunity to amend their petition in accordance with the delays set by the trial court. *See Byargeon v. Concordia Chamber of Commerce, Inc.*, 15-900 (La.App. 3 Cir. 3/16/16*), writ denied*, 16-705, (La. 6/3/16), 192 So.2d 752. Since the majority has affirmed the trial court's denial of the exception of no cause of action as to both the antitrust claims and the LUTPA claims, a remand at this juncture is moot, but I would find that the entire issue could be revisited on final appeal after full trial on the merits.

14